NATHANIEL LAVALLEE & others[1] vs. JUSTICES IN THE
HAMPDEN SUPERIOR COURT & others[2]
(and a consolidated case[3]).

Suffolk. June 30, 2004. - July 28, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts. *Constitutional Law,* Assistance of counsel, Separation of powers, Judiciary. *Practice, Criminal,* Assistance of counsel. *Attorney at Law,* Compensation. *Committee for Public Counsel Services.*

This court concluded that the petitioners, indigent criminal defendants being held in lieu of bail or under preventive detention, were entitled to relief pursuant to G. L. c. 211, § 3, where the petitioners, who had no attorneys to represent them due to the shortage of Hampden County bar advocates willing to accept assignment in their cases because of the low rate of attorney compensation authorized by the annual legislative budget appropriation, were being deprived of their right to counsel under art. 12 of the Massachusetts Declaration of Rights, resulting in severe restrictions on their liberty and other constitutional interests [233-238], and where the harm involved (the loss of opportunity to confer with counsel to prepare a defense) could not be remedied in the normal course of trial and appeal [238-241].

As part of the relief to be afforded pursuant to G. L. c. 211, § 3, to address the ongoing harm to indigent criminal defendants in Hampden County who have been deprived of their fundamental constitutional right to counsel due to the shortage of Hampden County bar advocates willing to accept assignment in their cases because of the low rate of attorney compensation authorized by the annual legislative budget appropriation, this court concluded that no defendant entitled to court-appointed counsel could be required to wait more than forty-five days for counsel to file an appearance, and that proceedings in which a defendant could not participate

---

[1]Several named indigent pretrial detainees, other unknown indigent criminal defendants, and the Committee for Public Counsel Services (CPCS) on behalf of future defendants.

[2]The Justices of the Springfield, Chicopee, Palmer, Westfield, and Holyoke Divisions of the District Court Department. Motions to intervene, filed by the district attorney for Hampden County and the sheriff of Hampden County, were allowed by a single justice of this court.

[3]Michael Carabello & others vs. Justices of the Holyoke District Court Department & others.

meaningfully could not be allowed to proceed; similarly, an indigent defendant being held in lieu of bail or under an order of preventive detention could not be held for more than seven days without counsel; further, this court outlined a system to implement such remedies. [241-249]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on May 6, 2004.

After consolidation, the cases were reported by *Spina,* J.

*William J. Leahy,* Committee for Public Counsel Services, & *David P. Hoose* (*Benjamin H. Keehn,* Committee for Public Counsel Services, *John Reinstein,* & *William C. Newman* with them) for Nathaniel Lavallee & others.

*Ronald F. Kehoe,* Assistant Attorney General, for Justices in the Hampden Superior Court & others.

The following submitted briefs for amici curiae:

*Paul J. Machado* for Bristol County Bar Advocates.

*Edward J. Barshak* for William C. Flanagan & another.

*Andrew Good & Charles P. McGinty* for Massachusetts Association of Criminal Defense Lawyers.

*Richard C. Van Nostrand, Martin W. Healy, Kristina H. Allaire, & Mary J. Kennedy* for Massachusetts Bar Association & another.

*Arnold R. Rosenfeld & Wendy A. Berliner* for Arnold R. Rosenfeld.

*R.J. Cinquegrana, Michelle L. Dineen Jerrett & Terrence M. Schwab* for Boston Bar Association.

SPINA, J. The petitioners are indigent criminal defendants who have no attorneys to represent them due to a shortage of lawyers in the Hampden County bar advocates program.[4] That shortage has been caused by the low rate of attorney compensation authorized by the annual budget appropriation. For fiscal year (FY) 2004 the authorized rates for private counsel were thirty dollars an hour for a District Court case, thirty-nine dollars an

---

[4]We acknowledge the amicus briefs filed by the Massachusetts Bar Association and Hampden County Bar Association; the Boston Bar Association, the Bristol County Bar Association; the Bristol County Bar Advocates; the Massachusetts Association of Criminal Defense Lawyers; William C. Flanagan and Edward J. Barshak; and Arnold R. Rosenfeld.

hour for a Superior Court case other than a homicide case, and fifty-four dollars an hour for a homicide case. See St. 2003, c. 26, § 2, line item 0321-1510.[5] Since 1986 there has been little change in these rates, which are among the lowest in the nation. See The Spangenberg Group, Rates of Compensation for Court-Appointed Counsel in Non-Capital Felonies at Trial: A State-by-State Overview (July 2002). The Committee for Public Counsel Services (CPCS) has asserted that it had no staff attorney in its public defender division, see G. L. c. 211D, § 6 (a), available to represent any of the petitioners due to its own staffing and funding limitations, or due to the conflict of interest that arises or may arise when attorneys from the same office also represent a codefendant or witness in the case.

On May 6, 2004, CPCS filed in the county court a petition seeking relief pursuant to G. L. c. 211, § 3, on behalf of Nathaniel Lavallee and eighteen other indigent criminal defendants (Lavallee petitioners) being held in lieu of bail or under preventive detention, without counsel, by order of judges in the Springfield District Court. On the same day, the American Civil Liberties Union of Massachusetts (ACLU) filed a petition on behalf of Michael Carabello and four other indigent defendants, also being held without counsel by order of judges in the Holyoke District Court. Both petitions were filed one day after judges in the Springfield and Holyoke District Courts had denied the petitioners' motions to compensate assigned counsel at a higher rate than the rates the Legislature has authorized CPCS to pay.[6]

The petitioners allege that, as a result of the Commonwealth's

---

[5]Statute 2003, c. 26, § 2, line item 0321-1510, and appropriation acts for fiscal years going back to FY 1999 refer generally to the hourly rates as those that were paid in the prior fiscal year. The appropriations act for FY 1998 specifically refers to the hourly rates described in the text. See St. 2002, c. 184, § 2, line item 0321-1510; St. 2001, c. 177, § 2, line item 0321-1510; St. 2000, c. 159, § 2, line item 0321-1510; St. 1999, c. 127, § 2, line item 0321-1510; St. 1998, c. 194, § 2, line item 0321-1510; St. 1997, c. 43, § 2, line item 0321-1510.

[6]The Springfield District Court judge denied the petitioners' motion on the ground that under the provisions of G. L. c. 211D and under the Supreme Judicial Court Rules, when there are no "competent attorneys willing or able to be appointed, then the appointment rests on the shoulders of CPCS." The Holyoke District Court judge denied the petitioners' motion after concluding that he had "no authority to order any increase in the level of compensation for appointed counsel."

chronic underfunding of the assigned counsel system administered by CPCS, there was no longer a sufficient number of certified private attorneys (bar advocates) willing to accept assignment in the petitioners' cases.[7] The petitioners sought a ruling that the failure of the Commonwealth to provide counsel to the petitioners warranted the exercise of this court's statutory or inherent powers of superintendence, and a declaration that the trial judges could order that assigned counsel be compensated at a higher rate. The rate they requested was sixty dollars an hour for District Court cases, ninety dollars an hour for cases "not within the final jurisdiction of the District Court," and one hundred twenty dollars an hour for murder cases. These proposed compensation rates are identical to those approved by CPCS in 2002, pursuant to its authority under G. L. c. 211D, § 11, to "establish rates of compensation payable, *subject to appropriation*, to all counsel who are appointed or assigned to represent indigents" (emphasis added).[8] In the alternative, the petitioners asked this court to determine a fair rate of compensation for assigned counsel, and to direct CPCS to begin paying private assigned counsel according to that rate or rates.

A single justice held a hearing on the petitions on May 6, 2004. Eleven days later the office of the Attorney General moved on behalf of the respondents (Justices of the Springfield and Holyoke District Courts) to dismiss the petitions. On May 20, the petitioners filed an opposition to the motion to dismiss, and further moved for immediate relief for those petitioners who had been detained without counsel for more than two weeks. On May 21, the Lavallee petitioners moved to amend the petition to add thirty-three more unrepresented indigent defendants in Hampden County as petitioners, and to name the Justices of additional Hampden County courts as respondents. The single justice allowed the motion to amend on May 25. He

[7] Part of the problem, as William J. Leahy, chief counsel for CPCS, noted at the May 5, 2004, hearing in Springfield District Court, is that "Hampden County just doesn't have as many lawyers as most of the eastern part of the State does."

[8] Historically, these rates have been rejected by the Legislature in its general appropriation acts, pursuant to G. L. c. 211D, § 11. Instead, the Legislature has specified the rates to be paid, and has not appropriated funds to pay the rates "establish[ed]" by CPCS. See, e.g., St. 2003, c. 26, § 2, line item 0321-1510; St. 2004, c. 149, § 2, line item 0321-1510.

consolidated the two cases and reserved and reported them without decision to the full court.

We conclude that the petitioners are being deprived of their right to counsel under art. 12 of the Massachusetts Declaration of Rights, a deprivation that has resulted in severe restrictions on their liberty and other constitutional interests. Although we do not grant the precise remedy the petitioners seek for the reasons we shall explain, we hold that, on a showing that no counsel is available to represent a particular indigent defendant despite good faith efforts, such a defendant may not be held more than seven days and the criminal case against such a defendant may not continue beyond forty-five days.

1. *Factual background.* Hampden County Bar Advocates, Inc., contracts with CPCS to provide counsel for indigent defendants in Hampden County in cases that CPCS staff attorneys are unable to accept. See G. L. c. 211D, § 6 (*b*). According to the petitioners, about fifty lawyers have left the Hampden County bar advocate program in the last several years because they are simply unable to make a living at the current compensation rates.[9] Many others in the program have reduced their days of availability due to the increased number of cases assigned, brought about as a result of both the increase in the number of criminal cases and the reduction in the number of attorneys available to take assigned cases. On May 3 and 4, 2004, no Hampden County bar advocates appeared in Springfield District Court, the busiest District Court in the Commonwealth, to accept assignments. As a result, many indigent defendants, including the nineteen original Lavallee petitioners, were arraigned on those two days without benefit of counsel. A judge set bail or issued an order of preventive detention for each unrepresented petitioner.[10]

On May 4, the presiding judge assigned the chief counsel for CPCS, William J. Leahy, to represent the Lavallee petitioners,

[9]Private counsel are responsible for their own office expenses (e.g., rent, equipment, telephone, library, and support services), as well as professional malpractice insurance, health insurance, and the employer's share of social security payments.

[10]According to Leahy, as of July 8, 2004, fifty-eight indigent defendants with cases pending in Hampden County were without counsel to represent them; thirty-one were held in custody.

pursuant to G. L. c. 211D, § 5, and S.J.C. Rule 3:10, as amended, 416 Mass. 1306 (1993).[11] Leahy, who was not present at the time, received the notices of assignment on the afternoon of May 4, and appeared in Springfield District Court the next morning (May 5). He informed the judge he was not there to represent the nineteen individual defendants, but rather to file and argue, collectively, motions to assign certified private counsel at rates exceeding those approved by the Legislature. The judge denied the motions, ruling that he would "continue with the order appointing CPCS," as he believed G. L. c. 211D required. Leahy's objections were noted.

As for the second petition, Michael Carabello was charged in Holyoke District Court on April 2, 2004, with, inter alia, armed assault within a dwelling and kidnapping. An attorney assisted him for the purpose of "bail only," but would not represent him thereafter. Bail was set at $100,000 cash or $500,000 surety. As of July 8, Carabello remained in custody without counsel and had not had a bail review in the Superior Court.[12]

2. *Discussion.* "The discretionary power of review under G. L. c. 211, § 3, is recognized as 'extraordinary,' and will be available only in 'the most exceptional circumstances.' *Costarelli* v. *Commonwealth*, 374 Mass. 677, 679 (1978)." *Hagen* v. *Commonwealth*, 437 Mass. 374, 377 (2002). Petitioners seeking relief under G. L. c. 211, § 3, must present a substantial claim involving important substantive rights, and demonstrate that any error cannot adequately be remedied in the course of trial or normal appellate review. See *Elder* v. *Commonwealth*, 385 Mass. 128, 132 (1982); *Powers* v. *Commonwealth*, 426 Mass. 534, 535 (1998).

A. *Right to counsel at bail and preventive detention hearings.* Several petitioners allege, and it is not disputed, that they have

---

[11]General Laws c. 211D, § 5, provides: "A justice or associate justice shall assign a case to [CPCS]" after receiving a report from the probation officer as to a defendant's ability to pay for counsel. Similarly, S.J.C. Rule 3:10, § 5, as amended, 416 Mass. 1306 (1993), provides that on a finding of indigency, "the judge shall assign [CPCS] to provide representation for the party."

[12]Subsequently, on July 8, 2004, through the intervention of the district attorney for Hampden County in response to this lawsuit, Carabello was indicted and arraigned in the Superior Court, and a CPCS attorney has filed an appearance on his behalf.

been ordered held in lieu of bail, or pursuant to an order of preventive detention, without the assistance of counsel. Because a defendant's liberty, a fundamental right, is at stake at a bail hearing, the principles of procedural due process in art. 12 of the Massachusetts Declaration of Rights are implicated. They include the right to be heard, which necessarily includes the right to be heard by counsel. See *Commonwealth* v. *Torres,* 441 Mass. 499, 501-502 (2004). A defendant is entitled to no less protection when the State seeks to deprive him of his liberty under the preventive detention provision of G. L. c. 276, § 58A, on the ground that he is dangerous. Section 58A (4) specifically includes a right to counsel. Neither a bail hearing nor a preventive detention hearing may proceed unless and until the defendant is represented by counsel.

B. *Right to counsel at trial.* The Attorney General, on behalf of the respondents, argues that because CPCS has been appointed to represent the petitioners, there has been no denial of the right to counsel. The petitioners, on the other hand, contend that "[t]his argument badly confuses the designation of a case to CPCS for the purpose of assignment of counsel with the actual assignment of an individual attorney to represent each petitioner." They assert that the Commonwealth's failure to ensure that competent counsel is appointed at a defendant's first appearance, or promptly thereafter, irreparably damages the petitioners' substantive right to the assistance of counsel.

There is no question that the right to counsel in a criminal prosecution is a fundamental constitutional right, see *Commonwealth* v. *Appleby,* 389 Mass. 359, 366, cert. denied, 464 U.S. 941 (1983), or that it is a substantive right for purposes of jurisdiction under G. L. c. 211, § 3. Furthermore, the right to counsel under art. 12 provides a defendant with at least the same safeguards as the Sixth Amendment to the United States Constitution. See *Commonwealth* v. *Fuller,* 394 Mass. 251, 256 n.3 (1985); *Commonwealth* v. *Hodge,* 386 Mass. 165, 169-170 (1982) (because art. 12 does not require defendant to prove actual prejudice once he has shown that counsel was burdened by actual conflict of interest, it provides greater safeguards than Sixth Amendment).

The right to trial counsel under art. 12 attaches at least by the

time of arraignment, *Commonwealth* v. *Patterson*, 432 Mass. 767, 776 n.10 (2000), or the point at which "the government has committed itself to prosecute" and "a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." *Commonwealth* v. *Simmonds*, 386 Mass. 234, 237-238 (1982), quoting *Kirby* v. *Illinois*, 406 U.S. 682, 689 (1972). The right to counsel extends to "every 'critical stage' of the criminal process." *Commonwealth* v. *Trapp*, 423 Mass. 356, 358, cert. denied, 519 U.S. 1045 (1996).[13]

This constitutional guarantee of the assistance of counsel "cannot be satisfied by mere formal appointment." *Avery* v. *Alabama*, 308 U.S. 444, 446 (1940). "An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Strickland* v. *Washington*, 466 U.S. 668, 685 (1984). The right to counsel means the right to effective assistance of counsel. See *Kimmelman* v. *Morrison*, 477 U.S. 365, 377 (1986).

There are myriad responsibilities that counsel may be required to undertake that must be completed long before trial if the defendant is to benefit meaningfully from his right to counsel under art. 12. See, e.g., *Commonwealth* v. *Roberio*, 428 Mass. 278 (1998), *S.C.*, 440 Mass. 245 (2003). These duties include interviewing the defendant and witnesses while events are fresh in their memories, preserving physical evidence that may be important to the defense, and locating potential defense witnesses. The effects of the passage of time on memory or the preservation of physical evidence are so familiar that the importance of prompt pretrial preparation cannot be overstated.

The right to counsel also includes assistance in making decisions about specific defenses and trial strategies, which may rise to the level of "critical stage" of the process. For example, "the decision to undergo a psychiatric evaluation is a critical stage." *Commonwealth* v. *Trapp, supra* at 359. Moreover, the

---

[13]Critical stages of the proceedings include the probable cause hearing, see *Commonwealth* v. *Donovan*, 392 Mass. 647, cert. denied, 469 U.S. 1038 (1984); a postindictment lineup, see *Gilbert* v. *California*, 388 U.S. 263 (1967); the trial, see *Gideon* v. *Wainwright*, 372 U.S. 335, 342-344 (1963); and sentencing, see *Osborne* v. *Commonwealth*, 378 Mass. 104 (1979).

failure of counsel to investigate the possibility of an insanity defense where "facts known to, or accessible to, trial counsel raised a reasonable doubt as to the defendant's mental condition" constitutes ineffective assistance of counsel. *Commonwealth* v. *Roberio, supra* at 280, quoting *Commonwealth* v. *Doucette,* 391 Mass. 443, 458-459 (1984). Critical stage opportunities may pass without a defendant's knowledge, and even if they can be revisited, the opportunity to develop them as fully had counsel been available may be impaired.

Our Rules of Criminal Procedure acknowledge the importance of prompt pretrial preparation to the fairness of criminal proceedings. They provide for mandatory discovery in all jury sessions, see Mass. R. Crim. P. 14, 378 Mass. 874 (1979); a pretrial conference report that must be filed within twenty-one days of arraignment, see Mass. R. Crim. P. 11 (a) (1) (A), 378 Mass. 862 (1979); and a pretrial motion procedure that must be engaged within seven days of the filing of the pretrial conference report. See Mass. R. Crim. P. 13 (d) (2) (A), 378 Mass. 871 (1979). Cases that are handled in nonjury sessions of the District and Boston Municipal Courts follow similar rules, but under slightly more flexible time constraints. See Dist./Mun. Ct. R. Crim. P. 3(c), 4, 5, 6 (2004). The purpose of these rules is "to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of expense and delay." Mass. R. Crim. P. 2, 378 Mass. 844 (1979). The petitioners, however, are not receiving the benefit of prompt discovery and preparation contemplated by the rules.

In view of the importance of prompt pretrial investigation and preparation, and the serious likelihood that without the assistance of counsel, decisions that are themselves critical stages are not being made, the petitioners currently are being deprived of counsel to an extent that raises serious concerns about whether they will ultimately receive the effective assistance of trial counsel. This is especially true for petitioners held in lieu of bail or under an order of preventive detention, who are virtually powerless to obtain a lawyer on their own or to begin working on their own defense. The harm from inaction over a period of time is cumulative. It is for precisely these reasons

that Mass. R. Crim. P. 7 (b), (c), 378 Mass. 855 (1979), requires an appearance of counsel to be filed at the arraignment, with certain limited exceptions. Although CPCS has been assigned to these cases, no counsel has filed an appearance, except as noted in some cases solely for purposes of a hearing on bail or preventive detention. For all of these reasons, we have no difficulty concluding that the petitioners' constitutional right to the assistance of counsel is not being honored.

The Attorney General claims that the petitioners are not entitled to relief because there has been no specific showing of harm. Although the petitioners have not yet claimed that they have been deprived of counsel at a critical stage of the proceedings,[14] we have said that the burden is on the Commonwealth to show that the lack of counsel at arraignment was harmless beyond a reasonable doubt. See *Delle Chiaie* v. *Commonwealth*, 367 Mass. 527, 531 (1975). This issue usually arises after trial, when a defendant has come forward with some specific evidence of harm. The difficulty here is that, without counsel, there is no way for the Commonwealth or the court to know what that harm is. We cannot properly rely on the petitioners themselves to assess the seriousness of any harm. An unrepresented criminal defendant cannot be expected "to navigate the complex criminal justice system." *Commonwealth* v. *Lasher*, 428 Mass. 202, 206 (1998). Similarly, it is not appropriate to infer from a petitioner's silence that there is no harm. The Supreme Court said in *Powell* v. *Alabama*, 287 U.S. 45, 69 (1932), that an unrepresented defendant "lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence." We need not wait for counsel's presence or the articulation of a specific harm before we may remedy the ongoing denial of counsel in the early stages of a case.

Moreover, because they are unrepresented, there is no require-

---

[14]Generally, arraignment itself is not a critical stage of criminal proceedings in Massachusetts. See *Chin Kee* v. *Commonwealth*, 354 Mass. 156, 163-164 (1968).

ment that the petitioners demonstrate the degree of harm that is required to prevail on a motion for a new trial. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974) (showing of "serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence"). Because the petitioners are seeking redress for the ongoing violation of their fundamental constitutional right that affects the manner in which the criminal case against them will be prosecuted and defended, it is enough that they have shown a violation of that right that may likely result in irremediable harm if not corrected. See *Luckey* v. *Harris*, 860 F.2d 1012, 1017 (11th Cir. 1988), cert. denied, 495 U.S. 957 (1990) (prospective protection of constitutional right to counsel is available "even if the violation of [that] right[] would not affect the outcome of a trial"). The absence of counsel for pretrial preparation "puts at risk both the defendant's right to an 'ample opportunity to meet the case of the prosecution,' [*Strickland* v. *Washington, supra* at 685, quoting *Adams* v. *United States ex rel. McCann*, 317 U.S. 269, 275 (1942)], and the reliability of the adversarial testing process. See [*Strickland* v. *Washington, supra*] at 688." *Kimmelman* v. *Morrison*, 477 U.S. 365, 385 (1986). Each petitioner has gone without counsel for a sufficiently long period of time to warrant our intervention in the interests of justice.

C. *Available remedies.* The Attorney General contends that because there are adequate remedies available, relief under G. L. c. 211, § 3, should be denied. He first describes certain "administrative remedies" within CPCS, including (1) assignment of lawyers from the public defender division of CPCS; (2) reaching out to the private bar to increase the pool of available attorneys; and (3) appointment of private attorneys by CPCS on a case-by-case basis. The "relief" described involves the internal management of CPCS and is not something that is available to the petitioners under any administrative procedure. More importantly, it is not relief that any petitioner could have obtained "in the normal course of trial and appeal," for purposes

of G. L. c. 211, § 3. *Foley* v. *Lowell Div. of the Dist. Court Dep't*, 398 Mass. 800, 802 (1986).

The Attorney General next argues that there are available judicial remedies. He contends that we have the inherent authority to order members of the bar to undertake representation of indigent criminal defendants on a pro bono basis. His reliance on *Edgerly* v. *Commonwealth*, 379 Mass. 183, 185-186 (1979), where the court cited *Abodeely* v. *County of Worcester*, 352 Mass. 719, 721-722 (1967), is misplaced. In the *Abodeely* case this court noted that before the decision in *Gideon* v. *Wainwright*, 372 U.S. 335 (1963), the majority of States followed the rule here advanced. *Abodeely* v. *County of Worcester, supra.* The court also indicated that Massachusetts was no longer among them. See *id.* at 721-723. The court also indicated that the burden for shouldering the cost of indigent defense must fall on the community at large, as they are the intended beneficiaries of the police power underlying the criminal justice system. *Id.* at 723. Counsel in both the *Edgerly* and *Abodeely* cases were in fact compensated for their services. The import of those cases is not that appointed counsel should receive no compensation at all, but that they are entitled to compensation at a rate more modest than can be expected in the marketplace. This is because the work that is voluntarily undertaken by them is in the nature of "public service," and because the source of compensation is a "limited public treasury." *Edgerly* v. *Commonwealth, supra* at 186, citing *Abodeely* v. *County of Worcester, supra* at 724. We also intimated that the duty of the State to pay compensation at this lower level was not a license to take unfair advantage of the private bar, but that appointed counsel should be compensated at a level that had some rational relation to the level of compensation paid to attorneys in the public defender division of CPCS. See *Edgerly* v. *Commonwealth, supra* at 186.

The Attorney General cites the authority of judges under G. L. c. 211D, § 2A (counsel need not be appointed where defendant charged with misdemeanor if judge announces at arraignment that defendant will not be sentenced to period of incarceration), and the authority of district attorneys under G. L. c. 277, § 70C (certain minor offenses may be prosecuted as civil infractions), as available remedies that would cure the

problem of the shortage of available attorneys. These procedures are well known to judges and district attorneys and may be utilized without the need for a defense motion. We can assume that the judges involved, as well as the district attorney, gave consideration to those measures and decided, in their sole discretion, not to employ them. The discretion of the district attorney to charge certain offenses as civil infractions is an exclusively executive prerogative, and a judge's discretion with respect to sentencing should be based on the customary factors governing disposition, not on the difficulties of securing counsel for the defendant.

There is no merit to the further suggestion that an available remedy lies in contempt proceedings that could be brought against CPCS. While contempt may be an appropriate remedy in certain circumstances, there is no indication that it is warranted here. If the Attorney General has reason to believe that a judge's assignment order is being disregarded, he may seek appropriate relief, including contempt. The duty to provide counsel to indigent criminal defendants belongs to the State, and the State is in the best position to enforce that duty. We cannot reasonably or rightfully expect an uncounselled defendant to seek enforcement of this duty, especially where the problem is not attributable to him.

Finally, the Attorney General contends that "failing all else . . . CPCS should move in the lower court for relief, such as continuances, or the suppression of an uncounselled lineup identification, or even dismissal in an extreme case." This would be an eminently reasonable solution except for the fact that CPCS says it does not have any attorneys available to represent petitioners in the manner suggested. The petitioners cannot be required to wait on their right to counsel while the State solves its administrative problems.

The harm involved here, the absence of counsel, cannot be remedied in the normal course of trial and appeal because an essential component of the "normal course," the assistance of counsel, is precisely what is missing here. The course of the proceedings in these cases is per se not normal. Although the harm may not be fully developed — a matter that can be ascertained at some later date after a petitioner has counsel —

the harm nevertheless exists; the loss of opportunity to confer with counsel to prepare a defense is one that cannot be adequately addressed on appeal after an uncounselled conviction. Cf. *Costarelli* v. *Commonwealth*, 374 Mass. 677, 679 (1978) (refusal to review pretrial double jeopardy claim would result in irremediable denial of constitutional right). We cannot countenance allowing a criminal prosecution to proceed against a defendant who does not have the benefit of counsel up to and including a trial on criminal charges for which he could face incarceration.[15] We therefore conclude that the petitioners have established a case for relief under G. L. c. 211, § 3.

3. *Relief.* The petitioners urge us to exercise our inherent powers and order judges to authorize compensation rates in excess of what the Legislature has appropriated. They rely primarily on *O'Coins, Inc.* v. *Treasurer of the County of Worcester*, 362 Mass. 507, 509-510 (1972) (relying on arts. 30, 29, and 11 of Massachusetts Declaration of Rights). "The power to direct the spending of State funds is a quintessential prerogative of the Legislature." *County of Barnstable* v. *Commonwealth*, 422 Mass. 33, 45 (1996), citing *County of Barnstable* v. *Commonwealth*, 410 Mass. 326, 329 (1991). See art. 30 ("the judicial shall never exercise the legislative and executive powers, or either of them"). However, "among the inherent powers possessed by every judge is the power to protect his court from impairment resulting from inadequate facilities or a lack of supplies or supporting personnel. To correct such an impairment, a judge may, even in the absence of a clearly applicable statute, obtain the required goods or services by appropriate means, including arranging himself for their purchase and ordering the responsible executive official to make payment." *O'Coin's, Inc.* v. *Treasurer of the County of Worcester*, *supra* at 510. We note

[15]An assistant attorney general, not counsel who has argued this appeal, acknowledged at a hearing on July 8, 2004, before the single justice, that art. 12 might preclude trial of an unrepresented defendant who had not waived the right to counsel. An unrepresented defendant who has not waived counsel and whose case is not tried within the time (one year) prescribed by Mass. R. Crim. P. 36, as amended, 428 Mass. 202 (1998), is entitled to dismissal. See *Commonwealth* v. *Lasher*, 428 Mass. 202 (1998). In contrast, an unrepresented defendant who is tried in violation of his Sixth Amendment right to counsel may not be sentenced to incarceration, or, in the alternative, he is entitled to a new trial. See *Alabama* v. *Shelton*, 535 U.S. 654 (2002).

that there is at present no claim here that the courts are unable to adjudicate cases due to "inadequate facilities or a lack of supplies or supporting personnel." *Id.*

But the experience of other courts that have considered questions similar to those presented in this case, lack of counsel or the inadequate compensation of counsel, is instructive. Concluding that the inadequate compensation of counsel amounts to the deprivation of the constitutional rights of the criminal defendants represented by inadequately compensated counsel, yet recognizing that appropriating funds is a legislative matter, several State courts have temporarily deferred in the first instance, and only temporarily, to legislative action to ensure that the system for compensation for indigent representation meets constitutional standards. See, e.g., *State ex rel. Stephan* v. *Smith*, 242 Kan. 336, 383 (1987) (unconstitutional system of compensation to be remedied by legislative and administrative action); *State* v. *Peart*, 621 So. 2d 780, 791 (La. 1993) (court will only exercise inherent power and supervisory jurisdiction if Legislature fails to act); *Smith* v. *State*, 118 N.H. 764, 771 (1978) ("adequate [legislative] appropriations will have to be made in order to comply with this ruling and to ensure the continued functioning of the criminal justice system").

In other circumstances State courts of last resort have granted preliminary relief in the form of increased compensation rates, but have simultaneously directed their Legislatures to amend permanently the compensation rates for indigent representation. See, e.g., *State ex rel. Wolff* v. *Ruddy*, 617 S.W.2d 64, 67-68 (Mo. 1981), cert. denied, 454 U.S. 1142 (1982) (court established temporary guidelines pending solution); *State* v. *Lynch*, 796 P.2d 1150, 1164 (Okla. 1990) (guidelines set by court effective until Legislature acts). A New York trial court recently issued a permanent injunction directing that counsel be paid ninety dollars per hour, and removed the statutory fee cap until the Legislature changed the rates and increased its appropriation for compensation for indigent representation. See *New York County Lawyers' Ass'n* v. *State*, 196 Misc. 2d 761, 778 (N.Y. Sup. Ct. 2003).

The Attorney General argues that the Legislature has increased the CPCS appropriation for FY 2005, and that we

should take no action in view of the Legislature's response. While the FY 2005 budget increases the total CPCS (public defender division) staff and operations appropriation by $1,201,260, to $16,676,269 from a level of $15,475,009 in FY 2004, much of this increase is earmarked for specific projects, making it all but unavailable for the hiring of new CPCS staff attorneys. Specifically, using the increased funding, CPCS is required by the Legislature to establish a staff office to handle sexually dangerous person commitment hearings and trials (at an estimated cost of $344,100) and to meet "critical non-personnel operational expenses" (at an estimated cost of $200,000). Moreover, while the FY 2005 appropriation for CPCS staff and operations exceeds the FY 2004 appropriation, it remains significantly below the amounts appropriated for FY 2002 ($17,017,460) and FY 2001 ($17,355,107), and this at a time when the number of criminal defendants requiring assigned counsel has increased. In sum, the FY 2005 staff and operations appropriation, while an increase over the FY 2004 amount, will permit the hiring of only a few additional full-time CPCS attorneys.

Nor can the arrival of additional staff attorneys at CPCS ameliorate the problem entirely. Where there are conflicts of interest stemming from representation of a codefendant or a witness, a CPCS staff attorney may not represent a defendant. Private counsel may therefore be needed, but the Legislature has not increased the hourly rate of compensation for attorneys in the private defender division for FY 2005, and there is no indication that the availability of private defenders in Hampden County will improve.

However, the decision by the Legislature to move away from the privatization of indigent defense services in favor of augmenting the public counsel division is one that is properly and plainly within its prerogative, and we accord great respect to the Legislature's recent efforts to address the provision of counsel for indigent defendants. The Legislature is keenly aware of the defendants' constitutional right to counsel, and of the demands that right makes on the public treasury. As the representative branch in charge of making laws and appropriating funds, it will no doubt continue to exercise prudence and

flexibility in choosing among competing policy options to address the rights of indigent defendants to counsel. "A spirit of mutual cooperation among the legislative, executive, and judicial departments is unquestionably the people's best guaranty of constitutional government." *O'Coin's, Inc.* v. *Treasurer of the County of Worcester, supra* at 515. We urge such cooperation in fashioning a permanent remedy for what can now fairly be seen as a systemic problem of constitutional dimension. In the meantime, however, while the constitutional rights of particular petitioners have not yet been adequately addressed, our powers of general superintendence require us to fashion an appropriate remedy to the continuing constitutional violation suffered by indigent criminal defendants in the courts of Hampden County.

Potential remedies that are available and that have been discussed with the parties include the dismissal of criminal charges and orders to stay criminal proceedings. In that regard, on July 2, 2004, we ordered the Attorney General to appear before the single justice to explain (1) why any petitioner held in lieu of bail for more than seven days without counsel should not be ordered released from confinement forthwith; and (2) why, with respect to any petitioner facing a felony charge for more than thirty days without counsel, or a misdemeanor or municipal ordinance violation charge for more than thirty days without counsel on which a judge has not declared, pursuant to G. L. c. 211D, § 2A, an intention to impose no sentence of incarceration, an order should not issue dismissing all such charges without prejudice until counsel is made available to provide representation to that petitioner. Because neither the district attorney for Hampden County nor the sheriff of Hampden County had been a party to these proceedings, either before the single justice or the full court, we offered to them the opportunity to intervene as to the issue of remedy, and both have intervened as to that aspect of the case.

The district attorney has indicated that many of the petitioners have been charged with serious offenses. He asserts that the release of those petitioners who are held, and the dismissal without prejudice of cases against them after thirty days without counsel, would jeopardize the public safety. We fully appreciate

his concerns, and we share them. Ensuring the public's safety is of the first order of government, a duty underlying all government action. All involved must seek to remedy the constitutional violations we address today without unduly increasing the risk to public safety. Public safety, however, comes with a cost. One of the components of that cost is the level of compensation at which counsel for indigent defendants will provide the representation required by our Constitution. See, e.g., *Smith* v. *State*, 118 N.H. 764, 771 (1978). As previously noted, the level of compensation paid to private counsel has barely changed over the last two decades, and is among the lowest in the nation. It is driving lawyers away from enrollment in the private defender division of CPCS in Hampden County. The inadequacy of compensation for private attorneys who represent indigent criminal defendants has persisted for many years. The continuation of what is now an unconstitutional state of affairs cannot be tolerated.

We also recognize that an appropriate remedy cannot and should not be implemented overnight. Our decision today allows time for the legislative and the executive branches to devise a response to the right of indigent criminal defendants to counsel that fully protects the public safety. Our holding also presumes that judges and prosecutors will continue to assess presumed threats to public safety on a careful, case-by-case basis. We are confident that all branches will work diligently and cooperatively to implement our decision in a manner that safeguards the public's interests.

The Attorney General and the district attorney ask that we take no action for sixty days, expecting the problem of the shortage of attorneys to be resolved by the recent legislative measures to augment the staffing and scope of services provided by the public defender division of CPCS in Hampden County, discussed above. We observe that there is no assurance that these measures will solve the problem. Moreover, these measures have not yet resulted in relief for the petitioners presently before this court. In response to this lawsuit and following our offer to permit him to intervene concerning remedies, the district attorney has undertaken administrative changes in his office to expedite the flow of "bind-over" cases into the

Superior Court. We laud the district attorney's initiatives and his ready accession to the mandates of art. 12. But we do not know if even the implementation of these measures will result in counsel to represent every indigent defendant in the Superior Court. Moreover, the district attorney's efforts would not be able to address the problem of the lack of lawyers for cases that remain in the District Court, where defendants continue to be arraigned and no counsel, public or private, is available to represent them.

We therefore must address the ongoing harm to indigent criminal defendants who are still deprived of counsel. The duty to provide such counsel falls squarely on government, and the burden of a systemic lapse is not to be borne by defendants. Our duty is to remedy an ongoing violation of a fundamental constitutional right to counsel consistently with the government's legitimate right to protect the public's safety. After hearing from the parties, the district attorney, and the sheriff, we conclude that no defendant entitled to court-appointed counsel may be required to wait more than forty-five days for counsel to file an appearance, a period of time that approximates the outer limits contemplated by the rules of criminal procedure for the completion of discovery and making decisions about specific defenses in routine cases where counsel is actively involved. Proceedings in which a defendant cannot participate meaningfully may not be allowed to proceed. If, despite good faith efforts by CPCS, no attorney has filed an appearance on behalf of an indigent defendant within forty-five days of arraignment, the criminal case against such defendant must be dismissed without prejudice. Cf. *Commonwealth* v. *Manning*, 373 Mass. 438, 439 (1977) (deeming dismissal of indictment with prejudice to be appropriate remedy for wilful interference with defendant's right to counsel). Similarly, an indigent defendant who is held in lieu of bail or under an order of preventive detention may not be held for more than seven days without counsel.[16] Ordering such relief recognizes the public's strong interest in bringing serious criminals to justice swiftly, but it also recognizes

---

[16]We believe this remedy also adequately addresses the rights of those defendants who were unrepresented at the time bail was set or preventive detention was ordered.

society's vital interest in the fair conduct of criminal proceedings. The resources that are available on any given day in a particular court must be prioritized and deployed in a manner that provides optimal protection to the public.

A system to implement the above remedy in an effective and efficient manner must now be devised, as to the present petitioners, other indigent defendants with criminal cases pending in Hampden County, and future indigent defendants in Hampden County. We outline such a system below, but will remand to the single justice the task of refining that system, or modifying it, after consultation with those who will be affected by this system: the district attorney for Hampden County or his designee, the Chief Justice for Administration and Management or his designee, the Regional Administrative Justice of the Superior Court for the western region (Superior Court RAJ) or his designee, the Regional Administrative Justice of the District Court for region 5 (District Court RAJ) or his designee, the Attorney General or his designee, the sheriff of Hampden County or his designee, the clerk of the Hampden Superior Court or her designee, a clerk-magistrate from Hampden County designated by the District Court RAJ (who shall represent and may consult with the clerk-magistrates of the District Courts of Hampden County), chief counsel for CPCS or his designee, counsel for the petitioners, and such others as the single justice may designate.

The clerk-magistrate of each District Court in Hampden County, and the clerk-magistrate of the Hampden Superior Court shall, on a weekly basis, prepare a list of all unrepresented criminal defendants facing charges in their respective courts and shall forward that list to the Superior Court RAJ, the District Court RAJ, the district attorney, the Attorney General, and chief counsel for CPCS. Such list shall contain the name of each defendant; the pending charges and docket numbers; the date of arraignment; the defendant's bail status; and whether the defendant is being held under an order of preventive detention. If there are no such unrepresented defendants, the clerk-magistrate's report shall so indicate.

On receipt of that list each week, the Superior Court RAJ shall schedule a prompt status hearing with respect to each

defendant who has been held for more than seven days, or each defendant whose case has been pending for more than forty-five days.[17] If, as of the time of that hearing, any defendant on that list is still unrepresented by counsel, the Superior Court RAJ shall determine whether CPCS has made a good faith effort to secure representation for each such defendant.[18] If the Superior Court RAJ determines that, despite good faith efforts of CPCS and any efforts by others to secure representation for any such defendant, there is still no counsel willing and available to represent a defendant, then the Superior Court RAJ must order the following: (1) with respect to any defendant who has been held in lieu of bail or pursuant to an order of preventive detention for more than seven days, the Superior Court RAJ shall order that the defendant be released on personal recognizance and may, in view of the emergency nature of this remedy, treat this as an exception to *Commonwealth* v. *Dodge*, 428 Mass. 860, 864-866 (1999), and impose probationary conditions pursuant to G. L. c. 276, § 87, without the defendant's consent; (2) with respect to any defendant who has been facing a felony charge for more than forty-five days without counsel, or a misdemeanor or municipal ordinance violation charge for more than forty-five days without counsel on which a judge has not declared, pursuant to G. L. c. 211D, § 2A, an intention to impose no sentence of incarceration, the Superior Court RAJ shall order that the charge or charges be dismissed without

---

[17]The Superior Court RAJ for the western region will be designated a judge of the District Court Department for purposes of this procedure, pursuant to G. L. c. 211B, § 9. See Requests for Interdepartmental Assignments, Trial Court Rules (2004). His designation shall last for six months, and for such additional six-month periods as the single justice may determine.

[18]We expect that CPCS, pursuant to its authority under G. L. c. 211D, § 6 (*b*), will take all reasonable measures to expand the list of attorneys available to accept assignments in criminal cases in Hampden County, who are not members of Hampden County Bar Advocates, Inc. In addition, the Superior Court RAJ, with the assistance of the Regional Administrative Justice of the District Court for region 5, may pursue all reasonable means to develop his own list of qualified and available attorneys from which he may make assignments, consistent with S.J.C. Rule 1:07, as amended, 431 Mass. 1301 (2000), whenever CPCS certifies that it has no available attorney. Such attorneys shall be entitled to compensation from CPCS appropriated funds at the rates approved by the Legislature.

prejudice until such time as counsel is made available to provide representation to that defendant.

We intend that these procedures be implemented in a manner that provides prompt relief to those defendants whose right to counsel is being violated, and sets a clear deadline by which counsel must be secured in order to proceed with the case or continue to hold a defendant. That deadline provides certainty to the defendants who are suffering a violation of their rights, and also provides all concerned with an opportunity of known duration to make all reasonable efforts to cure this violation in the most direct and effective way, i.e., to secure counsel for the defendant. We also intend that these procedures be adapted to permit an efficient, effective means of achieving those goals, without unnecessary burden on any participant in this process. To that end, as indicated above, we remand this matter to the single justice, who is given authority to modify the mechanism by which the forty-five and seven-day deadlines may be enforced in the courts of Hampden County, and who is to confer with the above identified participants with respect to appropriate modifications of that mechanism.

*So ordered.*